UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DEFRECE, JR.,

    Plaintiff,                                        Hon. Janet T. Neff

v.                                                        Case No. 1:17-cv-188

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **vacated and this matter remanded for further administrative action**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 39 years of age on his alleged disability onset date. (PageID.179). He successfully completed high school and worked previously as a landscape laborer. (PageID.55). Plaintiff applied for benefits on November 12, 2013, alleging that he had been disabled since May 1, 2005, due to lower back pain, headaches, and high blood pressure. (PageID.179-84, 212). Plaintiff subsequently modified his disability onset date to November 12, 2013. (PageID.44).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.115-77). On November 17, 2015, Plaintiff appeared before ALJ Stephen Marchioro with testimony being offered by Plaintiff and a vocational expert. (PageID.62-113). In a decision dated December 22, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.44-56). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.35-37). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

3

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease of the lumbar spine; (2) depression; and (3) Barrett's Esophagus, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.46-50).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he must be able to alternate between sitting and standing, meaning he can sit for up to fifteen minutes and stand for up to fifteen minutes while remaining at his workstation; (2) he can occasionally operate foot controls with his bilateral lower extremities; (3) he can never climb ladders, ropes, or scaffolds; (4) he can occasionally balance, stoop, kneel crouch, crawl, and climb ramps/stairs; (5) he is limited to jobs that require a handheld assistive device only for uneven terrain or prolonged ambulation; (6) he must avoid all exposure to excessive vibration, all use of unguarded machinery, and all exposure to unprotected heights; (7) he is limited to work that involves only simple, routine tasks; and (8) he is limited to only occasional interaction with the public, co-workers, and supervisors. (PageID.50).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964.

Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 136,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.104-08). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.      **Relevant Medical Evidence**

On December 20, 2012, Plaintiff reported to the emergency room after taking an excessive number of Vicodin and Adderall pills. (PageID.269). Plaintiff conceded that he was not prescribed Vicodin, but asserted that "he just gets it from around. . .because he is addicted." (PageID.269). Plaintiff also reported that he smokes marijuana. (PageID.269). The results of a CT scan of Plaintiff's head were unremarkable. (PageID.267). Plaintiff was diagnosed with narcotic dependence and treated for an overdose. (PageID.270).

On March 5, 2013, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed: (1) moderate degenerative disc disease at L4-L5, causing "severe right L4 foraminal narrowing and impingement of the exiting right L4 nerve root"; (2) degenerative changes at L3-L4 "resulting in moderate to severe left L3 foraminal narrowing"; and (3) degenerative changes "elsewhere in the lumbar spine that are not resulting in significant spinal

canal narrowing nor significant foraminal narrowing." (PageID.274). On April 30, 2013, and May 28, 2013, Plaintiff received epidural steroid injections to treat his back pain. (PageID.255-59). Plaintiff reported that this treatment resulted in "about 50% relief of his pain." (PageID.262).

On June 25, 2013, Plaintiff was examined by Dr. Christopher Marquart. (PageID.260-64). The doctor concluded that Plaintiff was experiencing "severe chronic pain with degenerative changes." (PageID.264). The doctor recommended that Plaintiff undergo spinal fusion surgery, but noted that Plaintiff "will need to quit smoking before we could even consider doing this." (PageID.264). On August 2, 2013, Plaintiff reported to his treating physician, Dr. Timothy Bont, that while he was "contemplating" back surgery, he was also considering applying for disability instead. (PageID.334).

On January 8, 2014, Plaintiff participated in a consultive examination conducted by Michael Brady, Ph.D. (PageID.306-09). Plaintiff exhibited "abnormalities in concentration," but the results of a mental status examination were otherwise unremarkable. (PageID.307-09). Plaintiff was diagnosed with: (1) adjustment disorder, with depressed mood; (2) major depressive disorder, recurrent, moderate; (3) cannabis dependence; and (4) polysubstance dependence, in sustained full remission. (PageID.309). Brady further reported that Plaintiff's "ability to relate and interact with others, including coworkers and supervisors, is impaired." (PageID.309). Brady also noted, however, that Plaintiff's "ability to understand, recall, and complete tasks and expectations does not appear to be significantly impaired." (PageID.309).

On September 30, 2014, Plaintiff was taken to the emergency room after being "struck [in the head] by a baseball bat several times." (PageID.404). Initial examination

7

revealed that Plaintiff suffered a cerebral concussion, skull fracture, and bruised ribs. (PageID.404-05). An October 3, 2014 examination revealed that Plaintiff suffered left-sided hearing loss, a "nondisplaced left occipital bone fracture," with "numerous" fractured teeth, and a "complete opacification of the left maxillary sinus." (PageID.440-46).

On November 4, 2015, Plaintiff participated in an MRI of his lumbar spine, the results of which revealed: (1) "mild" spinal stenosis from L2-3 through L4-5; and (2) "moderate to severe" foraminal narrowing at L3-4 and L4-5. (PageID.436-37). An MRI of Plaintiff's cervical spine, performed the same day, revealed a "small broad-based disc herniation" at C5-6 "without evidence of cord compression." (PageID.438).

**II.        The ALJ's Step Three Determination**

As noted above, at Step 3 of the sequential evaluation process, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. In this case, the ALJ determined that Plaintiff's impairments neither met nor medically equaled any listed impairment. Plaintiff argues that he is entitled to relief on the ground that he satisfies Section 1.04 (disorders of the spine) of the Listing of Impairments.

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff bears the burden to demonstrate that his impairments meet or equal a listed impairment. *See Retka v. Commissioner of Social Security*, 1995 WL 697215 (6th Cir., Nov. 22, 1995). Section 1.04 of the Listing provides as follows:

8

>Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root. . .or the spinal cord.   With:
>
>>A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), or
>>
>>B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>>
>>C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.

The medical evidence does not support the argument that Plaintiff suffers from a "compromise of a nerve root. . .or the spinal cord."   The evidence further reveals that Plaintiff cannot satisfy subsections A, B, or C of this particular Listing.   The ALJ specifically analyzed whether Plaintiff's impairments met or equaled Section 1.04, concluding that such was not the case.   This determination is supported by substantial evidence.   Accordingly, this argument is rejected.

### III.    The ALJ's Assessment of the Medical Opinion Evidence

On August 15, 2014, Plaintiff's treating physician, Dr. Timothy Bont, completed a report regarding Plaintiff's physical functional abilities.   (PageID.311-14).   The ALJ afforded

"partial weight" to Dr. Bont's opinions. (PageID.54). Plaintiff asserts that he is entitled to relief because the ALJ's reasons for affording less than controlling weight to Dr. Bont's opinions is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

The relevant portions of Dr. Bont opinion, which are contrary to the ALJ's RFC assessment, are as follows. Dr. Bont reported that during an 8-hour workday, Plaintiff can sit for

10

only "about 4 hours" and can stand/walk for "less than 2 hours." (PageID.312). The doctor reported that when engaged in "prolonged sitting," Plaintiff needed to be able to elevate his feet to "foot stool level." (PageID.313). The doctor reported that Plaintiff required the use of a "cane or other assistive device" when "engaging in occasional standing/walking." (PageID.313). In discounting Dr. Bont's opinions, the ALJ stated:

> Dr. Bont provided this medical source statement in August 2014 and, thus, it does not account for subsequent treatment or the November 2015 MRI. Further, while Dr. Bont is the claimant's treating physician, he is a family practitioner, not a specialist. He essentially checked the boxes on the form, without providing an explanation for the limitations. When asked to identify the clinical findings, laboratory, and test results that show the claimant's impairments, he stated only "abnormal MRI LS spine." In addition, his treatment notes do not warrant such a restricted degree of limitations. On the date he completed the form, his notes indicate that he encouraged the claimant to use less pain medication because he was receiving relief from his injections (7F/15). In addition, at that time, he was only using Tramadol and Lyrica for the pain (Id.). The undersigned agrees that the evidence supports the lifting and carrying limitations of ten pounds occasionally and less than ten pounds frequently and, therefore, gives this opinion partial weight.

(PageID.54).

The Court finds that the ALJ's explanation is not supported by substantial evidence. The ALJ discounts Dr. Bont's opinion because it does not account for "subsequent treatment" or the results of a November 2015 MRI. The ALJ did not identify what "subsequent treatment" allegedly contradicts the doctor's opinion. As for the November 2015 MRI, the Court fails to discern how such undermines Dr. Bont's opinion as such again confirmed that Plaintiff experiences spinal stenosis and foraminal narrowing throughout his lumbar spine.

The ALJ also asserts that Dr. Bont's opinions are undermined by his treatment notes authored the same day. The treatment notes in question read, in pertinent part, as follows:

> He has ongoing problems with low back pain and sciatica. Sciatica it is present in both legs and worse when he is standing. He has had at least one previous surgery on his back. His last MRI was done in 2013 and shows a fair amount of spinal stenosis. He has started receiving injections in the pain clinic and will likely have another MRI accomplished soon.
>
> He did see gastroenterology recently. He had an EGD and biopsy which showed changes of Barrett's esophagus. He was encouraged to increase his dose of omeprazole 40 mg daily. He is following anti-refl[u]x directions. He was insinuating he needs something stronger for pain but since he's getting relief from his injections I encouraged him to use less not more pain medicine. He is presently using tramadol and Lyrica.

(PageID.329).

The doctor's observations are not inconsistent with the opinions expressed in his function report. As for the alleged efficacy of the pain injections Plaintiff was receiving, even the ALJ acknowledged that "by April 2015, the record indicates that the injections were reportedly no longer helping (7F/15; 11F/4, 6; and 18F/8)." (PageID.52). The ALJ also suggests that taking tramadol and Lyrica is somehow inconsistent with Dr. Bont's opinions. Tramadol is an opiod analgesic used to treat "moderate to moderately severe. . .chronic ongoing pain." *See* Tramadol, available at https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (last visited on March 11, 2018). Lyrica is "used to treat pain caused by nerve damage due to diabetes, shingles (herpes zoster) infection, or spinal cord injury." *See* Lyrica, available at https://www.webmd.com/drugs/2/drug-93965/lyrica-oral/details (last visited on March 11, 2018). Prescription of these medications, even in reduced doses, is hardly inconsistent with Dr. Bont's opinions. Finally, the ALJ completely ignored the evidence that Plaintiff suffered a concussion and skull fracture after being struck with a baseball bat on September 30, 2014. In sum, the ALJ's decision to discount Dr. Bont's opinions is not supported by substantial evidence.

**IV.        The ALJ's RFC Assessment**

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

As the discussion in the previous section reveals, the ALJ's assessment of the medical evidence is not supported by substantial evidence. Thus, the Court finds that the ALJ's RFC assessment is likewise not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such questions must accurately portray the claimant's impairments).

**V.        Remand is Appropriate**

As discussed herein, the ALJ's decision is subject to remand for two reasons: (1) failure to properly evaluate the opinions of Plaintiff's treating physician, and (2) the ALJ's improper reliance on the vocational expert's testimony. While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th

Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **vacated and this matter remanded for further administrative action**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Dated: March 12, 2018

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge